Thomson, P. J.,
delivered the opinion of the court.
Complaint by Frank M. Love against R. M. Maloney, to *289 recover a balance alleged to be due on royalties reserved in a lease of mining premises entered into between tbe plaintiff and the defendant’s assignor.
. Tbe answer admitted tbe lease, and tbe assignment to the defendant, but denied indebtedness to tbe plaintiff. Proceeding further, tbe answer alleged a large outlay by tbe defendant in tbe development of tbe property and tbe extraction of ore, with a proportion of which, amounting to more than tbe sum claimed in tbe complaint, he averred tbe plaintiff was chargeable, and prayed judgment for tbe excess.
At tbe trial, the facts were not in dispute. Tbe decision turned below, and it turns here, upon tbe construction to be-given to tbe following covenant of tbe lessee, as contained in tbe contract of the lease. “ To debver to said lessors as royalty, sixteen and one-balf (16)) per cent, on all net proceeds from all smelter and freight charges and mill returns on all ore of tbe value of fifty dollars (§50.00) per ton or less; twenty-one and one-half (21)-) per cent, on all ore over tbe value of fifty dollars (§50.00) and not exceeding one hundred dollars (§100.00), and twenty-seven and one-balf (27)-) per cent, on all ore over tbe value of one hundred dollars (§100.00) per ton. It is also further agreed by and between tbe parties of tbe second part to deliver to tbe parties of tbe first part an undivided one-fourth non-assessable interest to the within lease free from all expense whatever to parties of tbe first part, said one-fourth interest being tbe net proceeds from said ore taken from said lease.” It is tbe meaning of the second clause of this covenant which is specially in controversy. Selecting the words, “ said one-fourth interest being the net proceeds from said ore taken from said lease,” as a foundation for their argument, defendant’s counsel maintain that tbe. plaintiff is chargeable with bis share of tbe cost of development and mining, and that tbe defendant is entitled to a set-off or recoupment of such share against tbe balance of royalty due the plaintiff, and for judgment in such sum as tbe plaintiff’s proportion of the expense mayexeeed the balance owing *290 to him. We are. referred to a number of authorities in which a definition is given to the words “net proceeds.” We need not specially notice these authorities, because we are in perfect agreement with them. The words “net proceeds,” as used in a contract, where their signification is not qualified or restricted by other words in the same contract, mean, what remains of the gross proceeds after all expense and loss incurred in realizing them are deducted.
The defendant had paid the plaintiff a considerable sum in pursuance of the provisions of the lease, and, adopting the most comprehensive definition of “ net proceeds,” he seeks to wipe out the unpaid residue, and to recover back out of what he had paid an amount sufficient to make him whole, so far as the share of his outlay for which he regards the plaintiff as liable, is concerned. What his rights in the premises really are must be determined, not by isolating certain words from the connection in which they occur, and putting an interpretation upon them without regard to their relative situation, but by considering all the language of which the words form a part. After providing for the paymeiit of specified royalties to the lessor, the contract reserves to him an undivided one-fourth interest in the lease, and describes the interest as “ nonassessable.” This is a term used by mining men, and has a definite and well understood meaning. In the phraseology of miners, a nonassessable interest in a lease upon a mining claim is an interest against which no expense is chargeable. The holder incurs no liability by reason of any work done upon the claim. The cost of sinking shafts, running drifts, and extracting ore, must be borne by the other interests. But the contract proceeds to define the one-fourth interest in question as being “net proceeds,” and upon these words counsel for the defendant plant themselves. If the words as they occur mean what counsel contend they do, then the interest is chargeable with its share of all money expended upon the mine. In other words, the interest is assessable ; and th« lessee has covenanted to give to the lessor' a *291 nonassessable interest which is not nonassessable, — a reductio ad absurdum. What meaning then did the parties intend to convey by “ net proceeds?” The words of themselves imply a deduction of something from gross proceeds. It is manifest that in whatever deduction the parties contemplated, it was not intended to include work upon the mine, because the interest was expressly exempted from liability on account of such work.
Having determined from the language employed in the second clause of the covenant, what the parties did not mean by “ net proceeds,” by referring to the first clause, we shall have no difficulty in finding what they did mean; because they have there given expression to the sense in which the words are to be understood. They have confined the deductions to be made from the gross proceeds in order that the result may be net proceeds, within certain limits. They say that the royalties shall be paid “ on the net proceeds from all smelter and freight charges and mill returns.” These words are not well put together, but every miner, and every person familiar with transactions involving leases of mining property, knows exactly what they mean. They mean that freight charges and charges for treatment are to come out of the gross mill or smelter, values, and what is left is the net proceeds.
It being evident from the language of the second clause that the parties did not intend any allowance to the lessee on account of the cost of development and mining, and it being equally evident that they intended a deduction of something to make the proceeds net, as they have given a definition of the words “net proceeds ” in the first clause, and as that clause and the other are both parts of the same contract, and are to be construed together, we must presume that they intended their definition of the words as used in the first clause, to apply to the same words as used in the second.
Whether we look at the two clauses together, or look at them separately, the work which the defendant claims he did, was’ not chargeable to the plaintiff, or to his interest in *292 the lease, and gave the defendant no right of action against him.
Let the judgment be affirmed.

Affirmed.